IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| AMG TRADE & DISTRIBUTION, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 0:18-cv-60062-WJZ |
| ) | |
| NISSAN NORTH AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S VERIFIED MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES AND COSTS**

Defendant, Nissan North America, Inc. ("Nissan"), respectfully moves under Rule 54(d)(2) of the Federal Rules of Civil Procedure, section 501.2105, Florida Statutes, and Local Rule 7.3 for an award of its reasonable attorneys' fees and non-taxable costs and expenses.[1]  The basis for this motion is the attorneys' fees provision in the Florida Deceptive and Unfair Trade Practices Act, which allows the prevailing party to receive its reasonable attorneys' fees and costs from the non-prevailing party.  Nissan seeks $646,077.00 in attorneys' fees and $76,634.39 in non-taxable costs and expenses.[2]  Because the factors for determining whether to award fees under the statute favor an award and the amounts sought by Nissan are reasonable, this motion should be granted.

**GROUNDS FOR MOTION (Local Rule 7.3(a)(1)&(2))**

On May 17, 2019, the Court granted Nissan's motion for summary judgment (DE 91) and entered a Final Judgment "in favor of Defendant Nissan North America, Inc., and against Plaintiff

---

[1] Nissan has separately filed its Bill of Costs (DE 93), with supporting declaration (DE 93-1) and, supporting memorandum (DE 93-2), pursuant to 28 U.S.C. § 1920, Rule 54(d)(1) of the Federal Rules of Civil Procedure 54(d)(1), and Local Rule 7.3(c).

[2] These amounts are exclusive of Nissan's attorney's fees, costs, and expenses on appeal.  As addressed further below, Nissan files this motion at this time notwithstanding that the non-prevailing party has filed a notice of appeal (DE 94) given the requirements of Local Rule 7.3(a)(1).

AMG Trade & Distribution, LLC" (DE 92). This motion is filed within 60 days of the entry of that judgment and is therefore timely under Local Rule 7.3(a)(1).

The Final Judgment resolved all claims, including the Complaint's alleged cause of action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), in favor of Nissan. FDUTPA provides that "[i]n any civil litigation resulting from an act or practice involving a violation of" the statute, "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1). Nissan seeks its attorneys' fees and non-taxable costs and expenses pursuant to this statute.

Nissan files this motion at this time for two reasons. First, Local Rule 7.3(a)(1) requires as follows:

> A motion for an award of attorneys' fees and/or non-taxable expenses and costs arising from the entry of a final judgment or order … shall … be filed within sixty (60) days of the entry of the final judgment or order giving rise to the claim, regardless of the prospect or pendency of supplemental review or appellate proceedings[.]

Local Rule 7.3(a)(1). Second, the case law addressing fee awards to prevailing parties under the FDUTPA is inconsistent as to how motions filed before the exhaustion of an appeal are to be addressed. *Compare Procaps S.A. v. Patheon Inc.*, 157 F. Supp. 3d 1199, 1200 (S.D. Fla. 2016) (staying motion for award of attorney's fees to prevailing party under FDUTPA pending exhaustion of appeal) *with Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.*, No, 3:04-CV-1076, 2006 WL 2691528, at *7 (M.D. Fla. Sept. 19, 2006) (denying without prejudice FDUPTA-based motion for fees and costs, subject to renewal after either the expiration of the time to appeal or the conclusion of an appeal). Nissan files its motion at this time out of an abundance of caution and in light of the mandate of Local Rule 7.3(a)(1). Nissan recognizes that in light of

FDUTPA's reference to "after … exhaustion of all appeals," Fla. Stat. § 501.2105(1), the Court may wish to stay this motion pending Plaintiff's appeal.

"An award of attorney's fees to the prevailing party under sections 501.2105(1)–(4) of FDUTPA is discretionary with the trial court." *Humane Soc. of Broward Cty., Inc. v. Fla. Humane Soc.*, 951 So. 2d 966, 968 (Fla. 4th DCA 2007). This standard is the same regardless of whether the prevailing party is the plaintiff or the defendant. *See id.* "[F]actors that a trial court might consider" in deciding whether to award attorneys' fees "include, but are not limited to:"

(1) the scope and history of the litigation;
(2) the ability of the opposing party to satisfy an award of fees;
(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
(4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
(6) whether the defense raised a defense mainly to frustrate or stall;
(7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*See id.* at 971–72. As explained below, these factors[3] weigh in favor of an award of Nissan's attorneys' fees here.

### A. Scope and History of the Litigation

This case lasted 17 months and involved significant discovery and motion practice by both sides. However, Plaintiff, AMG Trade & Distribution LLC ("AMG"), not Nissan, necessitated this by filing a baseless complaint. Nissan could find no precedent for AMG's novel and meritless theory under which a trademark owner would be held liable for statements made to U.S. Customs and Border Protection ("CBP") during its participation in CBP's investigation into counterfeit

---

[3] As the defendant prevailed here, the sixth factor is not relevant and is not addressed below. *See Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14-CV-22461, 2014 WL 6968073, at *5 (S.D. Fla. Dec. 9, 2014) ("The sixth factor, however, has no bearing on this case, as Defendant was the prevailing party, not the losing party.").

3

goods. Such participation is authorized by a regulatory scheme designed to protect federally registered trademark owners like Nissan from counterfeiting. While a complaint's novelty does not necessarily mean it is meritless, the absence of any such lawsuits after the millions of importation episodes at the many U.S. ports of entry and thousands upon thousands of annual CBP seizures and investigations[4] bespeaks the baselessness of AMG's complaint.

Despite Nissan's expressed belief that AMG's claim lacked merit, this case was significant for Nissan in that a ruling imposing liability for statements made to CBP could have impacted Nissan's actions to protect its trademarks from counterfeiting. It would also have been a poor precedent for other trademark owners and for CBP. Moreover, the fact that AMG sought more than $2.2 million in lost profit damages flowing from a shipment for which AMG was charged $145,338.76 (DE 86 at 1, 5–6) also bespeaks the absurdity of AMG's claims.

AMG's choice to bring this action caused Nissan to incur nearly every expense inherent in federal civil commercial litigation except for fees and expenses attendant to the trial itself, as well as certain pre-trial preparation work that was not necessary in light of the Court's granting of Nissan's Motion for Summary Judgment on May 17, 2019. AMG took seven depositions in this action—six of Nissan employees and one of Nissan's rebuttal damages expert. (Declaration of Thor Urness, attached hereto as **Exhibit 1**, at ¶ 13.) Nissan took eight depositions in this matter— three of AMG's employees or officers, two for its retained experts, and three of non-party witnesses put at issue by AMG. (*Id.*) Nissan also had to defend the deposition of its key in-house brand protection witness, Andy Forsythe, who was deposed in connection with a related but

---

[4] According to CBP, "[i]n fiscal year 2016, there were 31,560 intellectual property rights seizures with a manufacturer's suggested retail value of $1.4 billion." CBP 2017 Intellectual Property Rights Facts, available at https://www.cbp.gov/sites/default/files/assets/documents/2017-Mar/700942%20-%202017%20IPR%20Fact%20Sheet%20Update_OT%20final.pdf (visited June 9, 2019).

4

separate seizure of Nissan-branded parts and attendant litigation, styled *United States v. 709 Counterfeit Nissan Auto Parts*, No. 1:17-cv-24725-DPG (S.D. Fla.), and participate in other work in connection with that case, including communications with CBP. This work by Nissan's counsel at Bradley Arant Boult Cummings LLP ("Bradley") would not have been necessary but for Nissan having been sued by Plaintiff in this action. In addition, due to AMG's spoliation of the parts at issue in this case, Nissan was required to subpoena and work diligently to secure similar parts that AMG forfeited to the Government in the *709 Counterfeit Nissan Auto Parts* case. (*See* DE 69.)

There were also 14 contested motions in this matter. (Ex. 1 at ¶ 13.) Two of these were dispositive motions (DE 7, 28) filed by Nissan, including the Motion for Summary Judgment that was granted. Nissan was also required to file multiple discovery motions due to AMG's failure to provide proper discovery responses. While the Court initially held that a number of Nissan requests were overbroad, AMG actually relied upon the very information that it stated was not relevant. For example, AMG argued that Nissan's request for AMG's sales of Honda parts was overbroad, but then AMG's damages expert relied on that very same information in calculating AMG's alleged damages—a fact that was not before the Court at the time of that ruling. (DE 63 at 5, 15–16.) AMG also based its damages on loss of customers, but refused to disclose any information about these alleged customers. (DE 91 at 6–7; DE 63 at 16–18.) In short, AMG repeatedly refused to produce the information it put at issue by filing the complaint, which necessitated Nissan's motions to compel.

Because AMG created the need for all of the above by filing a meritless complaint, this factor weighs in favor of awarding fees.

**B.  Ability of the Opposing Party to Satisfy a Fee Award**

AMG has the ability to satisfy a significant fee award. In its 2018 tax return, AMG reported $587,248.00 of gross profit for sales in 2018 alone. (*See* Ex. 1 at ¶ 21.) AMG's 2018 Tax Return,

5

attached to Ex. 1 (Urness Decl.) as Exhibit L.)[5]  Although it claims that only $49,538.00 of ordinary business income remained after deductions, some of those costs (such as professional and legal services) appear unlikely to recur at that scale. (*See id.*)  AMG also reported $597,460.00 of assets and $375,051.00 of inventory. (*See id.*)  Therefore, it appears that AMG has the ability to satisfy a fee award in this case, so this factor also weighs in favor of granting Nissan's motion.

### C.     Potential Deterrence

The purpose of the attorneys' fees provision is "[t]o encourage citizens to invoke the protections of FDUTPA and file actions under that statute." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013).  Thus, "[t]he third factor is whether an award of fees and costs would deter others in future lawsuits in filing claims under FDUPTA." *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-CIV-23425, 2018 WL 1883086, at *5 (S.D. Fla. Jan. 26, 2018), *report and recommendation adopted*, No. 15-CIV-23425, 2018 WL 6980714 (S.D. Fla. Sept. 12, 2018).

The present case presents no risk of deterring desirable claims under FDUTPA.  The Court's Order found that "Plaintiff's claim under the FDUTPA fails because Defendant's conduct was not in the course of trade or commerce"—a core requirement of FDUTPA.  (DE 91 at 9.)  Thus, AMG's claim is not even of the type meant to be brought under FDUTPA.

Moreover, AMG's claim is far afield from the consumer protection claims for which the statute was designed.  Although FDUTPA might allow a non-consumer to bring a claim, it does require a plaintiff to "prove that there was an injury or detriment to consumers." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015); *see also TracFone Wireless, Inc. v. GSM Grp., Inc.*, 555 F. Supp. 2d 1331, 1337–38 (S.D. Fla. 2008).  Here, AMG never alleged or attempted to prove any meaningful harm to consumers.

---

[5] All exhibits are attached to and authenticated in the declaration of Thor Y. Urness (Ex. 1).

Instead, its claim was only that Nissan harmed AMG, a competitor, which is legally baseless under FDUTPA.

Awarding attorneys' fees against such a plaintiff will not discourage meritorious consumer lawsuits. Instead, it will discourage meritless lawsuits filed by competitors looking to expand liability by asserting claims under FDUTPA. Thus, this factor also weighs in favor of awarding fees.

### D. Merits of the Parties' Positions, Including Plaintiff's Culpability or Bad Faith

AMG sued Nissan on the basis of statements made to CBP during the course of a government investigation, but after 17 months, AMG never even presented any credible evidence that those statements were false. AMG's case focused on the false premise that Nissan lied to CBP in stating that parts in AMG's shipment from Oman were counterfeit. As evidence that this was false, AMG relied solely upon invoices showing that the alleged supplier of the exporter of the shipment in question bought parts from Nissan entities and a few[6] of the part numbers on these invoices matched part numbers in the shipments. However, AMG's own purported expert in interpreting such documents admitted that part numbers describe only the type of part and cannot be used to identify an individual part. (DE 85 at 4–5.) He also admitted that he could not use these invoices to determine whether the actual parts that Nissan evaluated were counterfeit or genuine. (*Id.*)

In other words, AMG sued Nissan based on the idea that Nissan made "false" statements without having any evidence that those statements were false. Indeed, AMG's corporate

---

[6] Out of the 16 part numbers in the shipment deemed counterfeit and required to be sent back to Oman (consisting of 217 parts), AMG's expert traced only *two* part numbers on invoices from Nissan entities to the alleged supplier, and these two part numbers were fewer in number (seven parts) than the number of those part numbers in the Jacksonville Shipment (12 parts). (*See* DE 85 at 4 and citations therein.)

7

representative admitted that he did not have any basis to doubt Nissan's conclusion that the parts were counterfeit.  (*See* Tr. of Apr. 11, 2019 Dep. of Anthony Bachan at 115:10–16, attached to Ex. 1 (Urness Decl.) as Exhibit M.)  Of course, there could not have been liability for *truthful* statements, so AMG had no basis to pursue its claims without any evidence that Nissan's statements were false.  Nissan has consistently taken this position in this litigation, in addition to pointing out the numerous legal defects of AMG's theory, including doing so in December 2016, over a year before AMG filed this action, when Nissan responded to a demand letter from AMG's counsel.  (*See* Correspondence attached to Ex. 1 (Urness Decl.) as Exhibit K.)

AMG's actions demonstrate bad faith.  Moreover, AMG's refusal to provide information directly relevant to its own theories as discussed above also indicates bad faith.  And it should not be forgotten that in addition to its bad faith, AMG is a bad actor.  AMG imported goods that CBP and Nissan found to be counterfeit.  AMG later agreed to export 217 of these parts back to Sabehath Trading, LLC in Oman, yet failed to do so and instead returned them, or some of them, to Dynamic Trading LLC in the United Arab Emirates.  AMG also forfeited 709 counterfeit Nissan auto parts in the *709 Counterfeit Nissan Auto Parts* case, facts to which AMG stipulated.  (*See* DE 84 at 6.)  Thus, this factor weighs in favor of awarding fees to Nissan.

### E.   The Frivolity, Groundlessness or Unreasonableness of the Claims

Nissan advised AMG more than a year before AMG filed suit that AMG's complaint against Nissan, first raised by letter dated November 7, 2016, was baseless.  Nissan did so by letter dated December 2, 2016.  (*See* Ex. 1, Ex. K.)  AMG's complaint was both groundless and wholly unreasonable.  As detailed in Nissan's motion to dismiss (DE 7), AMG's complaint focused on two statements allegedly made in an April 2016 letter from Nissan to CBP: (1) "the entire shipment was counterfeit," and (2) "Sabehath was not [an] affiliate of an authorized distributor of Nissan." (DE 1-1, ¶ 13.)  But the letter does not state that the entire shipment was counterfeit; it states that

8

"some parts reviewed are counterfeit," which was Nissan's finding that led it to characterize the shipment as "highly suspicious." (DE 7-1 at 1; *see also* DE 7 at 10.) The letter also states only that "Sabehath is not an affiliate or an authorized distributor of Nissan," which is accurate. (DE 7-1 at 1; *see also* DE 7 at 12.) This is a material difference, as Nissan could be expected to know whether a third party was an affiliate or authorized distributor of Nissan, but not whether another third party was an affiliate of such a distributor. (*See* DE 7 at 12.) Instead of acknowledging these facts, AMG attempted the legal equivalent of sleight of hand in an unsuccessful effort to confuse the Court.

Thus, in addition to pursuing its claims without any evidence to support them, AMG intentionally misrepresented the central facts of its complaint. Combined with the legal defects discussed above and AMG's status as a bad actor that has attempted to import counterfeit auto parts, which is a crime, these factual failings establish that the complaint was groundless and unreasonable. This factor also weighs in favor of awarding fees to Nissan.

### F. Significant Legal Question Under FDUPTA

Plaintiff's claims were not brought to resolve a significant question under FDUTPA. As the Court concluded, there was no real question here that Nissan's activities fell outside the conduct of trade or commerce and thus were beyond the reach of FDUTPA. (DE 91 at 9–14.) "Assisting the government with an investigation into suspected counterfeit items is incidental, not integral, to Defendant's commercial activities, and its actions were not conducted in the course of trade or commerce." (*Id.* at 14.) AMG's claims were similar to those courts have previously rejected. (*Id.* at 9–14.) Thus, the complaint was not brought to resolve a significant issue of law; it was brought for financial gain and to punish Nissan for telling CBP that parts AMG ordered were counterfeit. This factor also favors an award of fees.

9

### **AMOUNT SOUGHT (Local Rule 7.3(a)(3))**

Nissan seeks a total of $722,711.39 in attorneys' fees and non-taxable costs and expenses. Of this amount, $646,077.00 represents fees billed to this matter since the filing of the complaint on December 11, 2017 (DE 1-1). The remaining $76,634.39 represents non-taxable costs and expenses since the same date, which are detailed in Exhibit 1 to this Motion, the supporting Declaration of Thor Y. Urness.

Nissan notes that for an action that involved both FDUPTA and non-FDUTPA claims, recovery for fees is appropriate "'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.'" *Chow v. Chak Yam Chau*, 640 F. App'x 834, 843 (11th Cir. 2015) (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013)). Here, the same factual core supported both AMG's putative FDUTPA and tortious interference claims, so the work expended and associated costs and expenses relate to both claims and are therefore recoverable.

### **TERMS OF ANY APPLICABLE FEE AGREEMENT (Local Rule 7.3(a)(4))**

As explained in its counsel's supporting declaration, Nissan's counsel, Bradley, billed Nissan at its normal hourly rates at the time of each timekeeper's inception of work but without Bradley's normal annual hourly rate increase, which lessened the amounts that otherwise would have been incurred by Nissan in this matter. (*See* Ex. 1 at ¶ 17.) In addition, Nissan was not billed for more than $66,000 in work done by Bradley's timekeepers in this action. (*See id.* at ¶ 18.)

### **INFORMATION REGARDING EACH TIMEKEEPER FOR WHICH FEES ARE SOUGHT (Local Rule 7.3(a)(5))**

Nissan seeks recovery of fees for eight timekeepers—four who formed the core team for this matter and four who were brought in for discrete, necessary tasks over the 17 months of this litigation. Their identities, experience, qualifications, hours for which an award is sought, and

hourly rates are summarized below; the details of the hours they expended, and the tasks they performed are set forth in detail in the supporting Declaration of Thor Y. Urness attached hereto as Exhibit 1.

### A. Core Team

Four timekeepers formed Nissan's core outside legal team on this matter: Thor Y. Urness (Partner), Kimberly M. Ingram (Associate), Diana N. Evans (Associate), and Danielle Soderholm (Paralegal). More than 90% of the fees for which recovery is sought are for the hours of these four timekeepers. (*See* Ex. 1, Ex. G.)

#### 1. Thor Y. Urness

Thor Y. Urness was lead counsel in this matter. (Ex. 1 at ¶ 1.) Mr. Urness, a partner of Bradley in Nashville, has 30 years of experience practicing law and focuses upon intellectual property and competitive practices litigation. (*Id.* at ¶¶ 1–2, Ex. A.) In this time, he has tried numerous cases to juries and judges, representing both plaintiffs and defendants. (*Id.*) He is a Fellow of the American Bar Foundation, Tennessee Bar Foundation, and Nashville Bar Foundation, is rated "AV Preeminent" by Martindale-Hubbell®, Judicial Edition, has been listed in *The Best Lawyers in America*® continuously since 2005, is listed therein for Commercial Litigation, Litigation-Intellectual Property Litigation, and Trade Secrets Law, is listed in *Chambers USA*, and in *Benchmark Litigation* as a "Litigation Star," among other recognitions. (*Id.*)

Mr. Urness worked 659.90 hours on this matter for which an award is sought at this time, all at an hourly rate of $580 (which his lower than his present normal hourly rate, which is $630 for 2019, and was $605 for 2018). (Ex. 1 at ¶¶ 2, 20; Exs. G & H.) As lead counsel in this matter, Mr. Urness directed the litigation and its strategy; drafted, reviewed, and/or revised every court filing by Nissan; drafted, reviewed and/or revised every discovery request, response or subpoena

served by Nissan; prepared Nissan's witnesses for depositions; took and defended most of the depositions; communicated with opposing counsel and counsel for CBP; attended mediation; and prepared for trial. (Ex. 1 at ¶ 2.)

### 2. Kimberly M. Ingram

Ms. Ingram is an associate in Bradley's Nashville office and is licensed in Tennessee and California. (*Id.* at ¶ 3; Ex. B) Ms. Ingram is a 2015 graduate of Vanderbilt University Law School, where she was Order of the Coif and on the Executive Board of *Vanderbilt Law Review*. (*Id.*) Prior to joining Bradley, Ms. Ingram was an associate at Simpson Thacher & Bartlett LLP in Palo Alto, California. (*Id.*) In her time at Bradley, she has worked on a variety of complex business matters, including the successful trials of two such matters, and has won several cases on summary judgment. (*Id.*)

Ms. Ingram worked 522.10 hours on this matter for which an award is sought at this time, all at an hourly rate of $275 (which is lower than her present normal hourly rate, which is $320 for 2019, and was $290 for 2018). (Ex. 1 at ¶¶ 3, 20; Exs. G & H.) Ms. Ingram's work included but was not limited to: preparing the notice of removal, drafting briefing on Nissan's motion to dismiss, researching applicable law, drafting Nissan's answer, drafting discovery requests and subpoenas, coordinating discovery efforts, taking the deposition of Talia Pockhai (Plaintiff's Director of Operations), preparing outlines and documents for other depositions, drafting summary judgment briefing, drafting two *Daubert* motions and various pretrial submissions required by the Local Rules, and communicating with opposing counsel. (Ex. 1 at ¶ 3.)

### 3. Diana N. Evans

Ms. Evans is a litigation associate in Bradley's Tampa office and is licensed in Florida. (*Id.* at ¶ 4; Ex. C) Ms. Evans is a 2012 *magna cum laude* graduate of Stetson University College of Law, where she was Notes & Comments Editor, *Stetson Law Review*. (*Id.*) Prior to joining

Bradley, she clerked for the Honorable James S. Moody Jr. of the U.S. District Court for the Middle District of Florida. (*Id.*) Ms. Evans works on a variety of business litigation matters and has successfully achieved summary judgment in such matters. (*Id.*)

Ms. Evans worked 196.50 hours on this matter for which an award is sought at this time, all at an hourly rate of $320 (which is lower than her present normal hourly rate, which is $340 for 2019). (Ex. 1 at ¶¶ 4, 20; Exs. G & H.) Ms. Evans' work included but was not limited to: reviewing all draft motions for compliance with local rules, drafting discovery motions, researching applicable law, reviewing documents for production, advising Nissan as to Florida law, drafting jury instructions, and communicating with opposing counsel. (Ex. 1 at ¶ 4.)

### 4. *Danielle Soderholm*

Ms. Soderholm is a paralegal in Bradley's Nashville office with 14 years of experience and a paralegal certificate, who has assisted in two paralegal training programs. (*Id.* at ¶ 10.)

Ms. Soderholm worked 122.20 hours on this matter for which an award is sought at this time, all at an hourly rate of $250, but Nissan seeks an award for her work at an hourly rate of $125. (*Id.* at ¶¶ 10, 20; Exs. G & H.)[7] Ms. Soderholm assisted primarily in managing documents produced by the parties and in preparing exhibits for depositions and trial. (*Id.*)

### B. **Specialized Support**

Other timekeepers were brought in to this matter for discrete tasks. Nissan seeks recovery of fees for four such timekeepers: Eliot B. Peace (Associate), Edmund Sauer (Partner), Caroline D. Spore (Associate), and Matthew Mondary (e-discovery specialist). (*Id.* at ¶ 5.) Nissan was

---

[7] Exhibits G and H reflect Ms. Soderholm's hours at her normal hourly rate of $250. With the reduced rate, the total amount sought for Ms. Soderholm is $15,275. This reduces the total further than is reflected on Exhibit G. (Ex. 1 at ¶ 12.)

13

charged $9,073.76 for the time of four other timekeepers, but does not seek recovery of these amounts. (*Id.* at ¶ 18.)

### 1. *Eliot B. Peace*

Mr. Peace is an associate in Bradley's Tampa office and is licensed in Florida. (*Id.* at ¶ 6; Ex. D.) He is licensed in Florida and a 2010 graduate of the University of South Carolina School of Law, where he was Articles Editor, *Real Property, Trust and Estate Law Journal*. (*Id.*) Prior to joining Bradley, Mr. Peace clerked for the Honorable Justice John W. Kittredge of the South Carolina Supreme Court and the Honorable Timothy M. Cain of the United States District Court for the District of South Carolina. (*Id.*)

Mr. Peace worked on this matter only in August 2018, for the limited purpose of reviewing the voluminous documents that Nissan had collected for responsiveness to Plaintiff's discovery requests and for privilege. (Ex. 1 at ¶ 6.) Nissan seeks recovery for the 28.60 hours Mr. Peace worked during that month. (*Id.* at ¶ 20; Exs. G & H.) Mr. Peace's assistance in this matter was required because Ms. Ingram was participating in a month-long trial in Philadelphia during August 2018 and the volume of documents was too large for Ms. Evans to review alone. (Ex. 1 at ¶ 6.) Because Ms. Ingram would otherwise have reviewed these documents if not for her unavailability, Nissan was charged at the same rate it would have been for Ms. Ingram: $275 per hour. (Mr. Peace's standard hourly billable rate for 2018 was $325.) (*Id.*)

### 2. *Edmund S. Sauer*

Mr. Sauer is a partner in Bradley's Nashville office specializing in appellate law. (*Id.* at ¶ 7; Ex. E.) He has been licensed to practice law in Kentucky since 2004, is also licensed in Arkansas, Tennessee, and Washington, D.C., and is a 2004 graduate of the University of Virginia School of Law, where he was Editorial Board Member, *Virginia Law Review*. (*Id.*) Prior to joining Bradley, Mr. Sauer clerked for the Honorable Jane B. Stranch and the Honorable Boyce F. Martin,

14

Jr. of the U.S. Court of Appeals for the Sixth Circuit, and worked as an appellate lawyer at Mayer Brown LLP in Washington, D.C. (*Id.*)

Mr. Sauer worked 43.80 hours on this matter for which an award is sought at this time, all at an hourly rate of $495, his normal hourly rate. (Ex. 1 at ¶¶ 7, 20; Exs. G & H.) Mr. Sauer assisted in the formulation of Nissan's trial strategy and the preparation of Nissan's proposed jury instructions and verdict form. (Ex. 1 at ¶ 7.)

### 3. *Caroline Spore*

Ms. Spore is an associate in Bradley's Nashville office specializing in appellate law. (*Id.* at ¶ 8; Ex. F.) Ms. Spore is licensed in Tennessee and a 2017 *summa cum laude* graduate of Washington University College of Law, where she was Order of the Coif and Senior Executive Editor, *Washington University Law Review*. (*Id.*) Prior to joining Bradley, Ms. Spore clerked for the Honorable Julia Gibbons of the U.S. Court of Appeals for the Sixth Circuit. (*Id.*)

Ms. Spore worked 27.20 hours on this matter for which an award is sought at this time, all at an hourly rate of $295, her normal hourly rate. (Ex. 1 at ¶¶ 8, 20; Exs. G & H.) Ms. Spore assisted Mr. Sauer with research regarding questions of law and drafted the omnibus motion *in limine* for the exclusion of evidence at trial. (Ex. 1 at ¶ 8.)

### 4. *Matthew Mondary*

Matthew Mondary is an eDiscovery & Litigation Support Project Coordinator in Bradley's Nashville office, holds various e-discovery certifications, and has more than eight years of litigation support experience, five of which have been as an eDiscovery Processing Specialist; prior to that, Mr. Mondary had 13 years of experience in traditional information technology roles. (*Id.* at ¶ 11.)

Mr. Mondary worked 24.40 hours on this matter for which an award is sought, all at an hourly rate of $250, but Nissan seeks an award for his work at an hourly rate of $125. (*Id.* at ¶¶ 11,

15

20; Exs. G & H.)[8]  Mr. Mondary provided support in this matter in gathering and producing documents from Nissan, gathering documents from Plaintiff, working with Plaintiff's counsel to resolve technological issues with Plaintiff's production, and organizing documents received from Plaintiff, its experts, and third parties for review by attorneys.  (Ex. 1 at ¶ 11.)

## **DESCRIPTION OF INVOICES (Local Rule 7.3(a)(6))**

From the inception of this matter to the bill for May 2019 time, Mr. Urness reduced the fees incurred by Nissan by more than $66,000 before billing.  (*See* Ex. 1 at ¶ 18.)  Such amounts are not sought in this motion.  Nissan also does not seek to recover time for any bills from the inception of the matter (*i.e.*, Plaintiff's demand letter) until the filing of the Complaint in December 2017, which totaled more than $3,000.  (*Id.* at ¶ 19.)  As discussed herein and Mr. Urness's supporting declaration, Nissan has also excluded from this motion time incurred by certain timekeepers and has reduced the rates of certain timekeepers.  (*Id.* at ¶ 18.)  Thus, Nissan does not seek *all* of its fees and expenses in seeking $646,077.00 of its total fees and $76,634.39 of its non-taxable costs and expenses.  (*Id.* at ¶ 20.)

The work done by each timekeeper at Bradley is described above and set forth in detail in the accompanying statements submitted herewith.  (*See* Ex. 1, Exs. G, H).  Bradley's invoices were issued on a monthly basis and include both the fees and expenses that Bradley charged Nissan for the month, including charges of Nissan's damages expert witness, Vic Alexander, CPA, the mediator, Mark E. Stein, and private investigators.  (Ex. 1 at ¶ 12; Exs. H.)  Nissan also received invoices from its eDiscovery vendor, Legility.  (Ex. 1 at ¶ 14; Ex. I.)

Below, Nissan describes the invoices for the non-taxable expenses it seeks in this motion.

---

[8] Exhibits G and H reflect Mr. Mondary's hours at his normal hourly rate of $250.  With the reduced rate, the total amount sought for Mr. Mondary is $3,050.  This reduces the total further than is reflected on Exhibit G.  (Ex. 1 at ¶ 12.)

### A. Charges By Rebuttal Damages Expert

Because Plaintiff retained a damages expert and sought more than $2.2 million in claimed lost profits, Nissan retained a rebuttal damages expert, Vic Alexander, CPA, who is the Chief Manager of KraftCPAs PLLC, based in Nashville. (Ex. 1 at ¶ 15; Ex. J.) Mr. Alexander has more than 35 years of experience and is a very well-qualified and extremely experienced expert on the issue of damages in commercial and other disputes. (*Id.*) His practice involves business valuation, financial analysis, and litigation support, including as an expert witness. (*Id.*) He also has significant experience in supporting and critiquing damages claims by automotive parts suppliers. (*Id.*) Through the American Institute of Certified Public Accountants (AICPA), Mr. Alexander holds the Accredited in Business Valuation (ABV) and Certified in Financial Forensics (CFF) credentials.

Mr. Alexander's hourly rate is $400, while the rates of others who assist him range from $120 to $500 per hour. (*Id.*) Mr. Alexander and his colleagues spent 130.48 hours on this matter, and through its counsel, Nissan was billed $36,487.10. (*Id.*) Mr. Alexander prepared an expert report and later supplemented that report based upon information subsequently produced by Plaintiff, consulted with Mr. Urness and Ms. Ingram as to damages issues, and was deposed by Plaintiff. (Ex. 1 at ¶ 15.)

### B. Charges by E-Discovery Vendor

Nissan has a relationship with an electronic discovery and litigation support vendor, Legility, in order to ensure completeness and accuracy in collecting electronically stored information from Nissan. (Ex. 1 at ¶ 14, Ex. I.) Legility assisted counsel in formulating appropriate search terms, collected documents from Nissan, loaded them into a review platform, provided support to Bradley in reviewing the documents collected, prepared documents for production, and produced to Plaintiff the documents Bradley designated as responsive. (*Id.*) The

17

total amount of Legility's charges is $36,762.29. (*Id.*) While Legility's charges include electronic copying charges that are recoverable as taxable costs, Nissan seeks such costs as part of this motion and not through its Bill of Costs. (*Id.*)

### C. Charges by Private Investigator

Because AMG refused to provide either last known addresses or other contact information for former employees put at issue in this lawsuit, Nissan's counsel was required to hire private investigators to locate Ryan Rengen and Sanjay Singh for deposition. (Ex. 1 at ¶ 16.) Nissan was charged $1,441.98 for these efforts. (*Id.*, Ex. H.) Of this amount, $1,056.98 was sought in the Bill of Costs. (DE 93.) Nissan seeks the remaining $385 through this motion, or any portion of the $1,056.98 that is not granted in the bill of costs.

### D. Charges by Mediator

As reflected on the December 12, 2018 invoice for November time and expenses, the mediator charged Nissan $3,000. (*See* Ex. 1 at ¶ 12; Ex. H.) The Court ordered this mediation (DE 16) during AMG's pursuit of its meritless claims, and Nissan should therefore also be awarded this expense.

### **VERIFICATION (LOCAL RULE 7.3(a)(7))**

A verification of these amounts appears in the declaration of Thor Y. Urness (Ex. 1).

### **CERTIFICATION OF GOOD FAITH EFFORT TO RESOLVE ISSUES BY AGREEMENT (LOCAL RULE 7.3(a)(8))**

In accordance with Local Rule 7.3(b), the undersigned hereby certifies that a good faith effort to resolve issues by agreement occurred as required under Local Rules 7.3(a) and (b), including by providing Plaintiff's counsel with a timely draft motion compliant with Local Rule 7.3(a)(1–8), but counsel were not able to resolve by agreement any of the issues raised in this motion. Although Local Rule 7.3(b) requires that "respondent shall describe in writing and with

reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority," Plaintiff did not comply with this requirement.

Dated: July 15, 2019

>Respectfully submitted,
>
>*s/Diana N. Evans*
>Diana N. Evans (Fla. Bar No. 98945)
>BRADLEY ARANT BOULT CUMMINGS LLP
>100 North Tampa Street, Suite 2200
>Tampa, FL 33602
>Telephone: (813) 559-5500
>Facsimile: (813) 229-5964
>Email: dnevans@bradley.com
>
>Thor Y. Urness (*Pro Hac Vice*)
>Kimberly Ingram (*Pro Hac Vice*)
>BRADLEY ARANT BOULT CUMMINGS LLP
>1600 Division Street, Suite 700
>Nashville, TN 37203
>Telephone: 615.244.2582
>Facsimile: 615.252.6380
>Email: turness@bradley.com
>Email: kingram@bradley.com
>
>*Counsel for Nissan North America, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I have served via ECF Defendant's Verified Motion for Attorneys' Fees and Expenses and Costs on the following attorneys of record:

Andres H. Lopez, Esq.
The Andres Lopez Law Firm, PA
7351 Wiles Road, Suite 101
Coral Springs, Florida 33067

Robert J. Becerra, Esq., B.C.S.
Becerra Law, PA
1001 Brickell Bay Drive, Suite 1200
Miami, Florida 33131

*s/Diana N. Evans*
Diana N. Evans