UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60062-WILLIAMS/VALLE

AMG TRADE & DISTRIBUTION, LLC,

    Plaintiff,

v.

NISSAN NORTH AMERICA, INC.,

    Defendant.
_____/

# REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Defendant's Motion for Bill of Costs (ECF No. 105) and Verified Motion for Award of Prevailing Party Attorneys' Fees and Non-Taxable Expenses and Costs (ECF No. 106) ("Motion for Attorneys' Fees and Costs") (together, the "Motions"). United States District Judge Kathleen M. Williams has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 113).

Having reviewed the Motions, Plaintiff's Response (ECF No. 110), Defendant's Reply (ECF No. 112), and being otherwise duly advised in the matter, the undersigned recommends that: (i) Defendant's Motion for Attorneys' Fees and Costs be **DENIED**; and (ii) Defendant's Motion for Bill of Costs be **GRANTED IN PART**. As discussed below, the undersigned recommends that Defendant be awarded $19,062.86 in taxable costs.

## I.    BACKGROUND

The procedural history of this case is set forth in the prior opinions of the District Court and Eleventh Circuit, which are incorporated by reference. *See* (ECF Nos. 91, 104); *AMG Trade & Distrib., LLC v. Nissan N. Am., Inc.*, No. 18-60062-CIV, 2019 WL 11583368, at *1 (S.D. Fla. May

17, 2019), *aff'd*, 813 F. App'x 403 (11th Cir. 2020).  Below is a summary of the proceedings relevant to the instant Motions.

Plaintiff AMG Trade & Distribution, LLC, originally filed this action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.  *See generally* (ECF No. 1).  On January 11, 2018, Defendant Nissan North America, Inc. removed this action to federal court.  Plaintiff asserts three claims:  tortious interference with a business relationship (Count I); tortious interference with a contractual relationship (Count II); and violations of FDUTPA (Count III).  *See generally* (ECF No. 1).  The Complaint arises from the February 2016 detention and seizure of Plaintiff's shipment of auto parts by Customs and Border Patrol ("CBP") in Jacksonville, Florida.[1]  *See generally* (ECF No. 1).  According to the Complaint, CBP requested that Defendant evaluate the authenticity of the parts in the shipment.  *Id.*  Defendant's representatives evaluated the shipment in March 2016 and reported to CBP that the shipment contained counterfeit parts.  *Id.*  Consequently, CBP formally seized the shipment in May 2016 on the grounds that it contained counterfeit parts.  *Id.; see also* (ECF No. 91) (Order granting summary judgment).  Plaintiff alleged that Defendant made false statements to CBP in an effort to harm Plaintiff's business and stifle competition.  *Id*.

On May 21, 2018, the District Court summarily denied Defendant's motion to dismiss as "the legal issues raised [were] more properly addressed in a [m]otion [f]or [s]ummary [j]udgment." (ECF No. 20).  Thereafter, after full briefing on the motion for summary judgment, on May 17, 2019, the District Court granted Defendant's motion for summary judgment.  *See generally* (ECF No.  91).  In granting summary judgment, the District Court concluded that Plaintiff's claims for tortious interference in a business and contractual relationship (Counts I and II) had a "foundational problem"

---

[1] Plaintiff is as a seller of genuine grey market auto parts in the United States.  (ECF No. 110 at 1). According to Plaintiff, grey market goods are legal, genuine parts that are sold outside of the normal distribution channels by entities that may not have a direct relationship with the manufacturers of the goods.  *Id.*  Plaintiff asserts that by selling grey market parts (i.e., legitimate Nissan parts at lower prices), it competes with Defendant to sell its products.  *Id.*

in that "Plaintiff failed to show any business or contractual relationship that had been harmed by Defendant's alleged interference." (ECF No. 91 at 5). Similarly, the District Court granted summary judgment on the FDUTPA claim (Count III) because "Defendant's conduct was not in the course of trade or commerce." (ECF No. 91 at 9). Rather, the District Court concluded that "[a]ssisting [CBP] with an investigation into suspected counterfeit items is incidental, not integral, to Defendant's commercial activities . . . ." (ECF No. 91 at 14). Accordingly, the District Court granted summary judgment to Defendant on all counts. *Id.* On May 7, 2020, the Eleventh Circuit affirmed the grant of summary judgment for Defendant.[2] (ECF No. 104). The instant Motions followed.

In its Motion for Attorneys' Fees and Costs, Defendant seeks $751,798.50 in attorneys' fees and $76,634.39 in non-taxable costs and expenses, for a total of $828,432.89. (ECF No. 106 at 2, 11, 20). In its Motion for Bill of Costs, Defendant seeks an additional $20,031.54 in taxable costs, which include: fees of the Clerk ($400); fees for service of summons and subpoenas ($1,056.98); fees for printed or electronically recorded transcripts ($18,337.86); and taxable appellate costs ($236.70). (ECF No. 105).

## II. MOTION FOR ATTORNEYS' FEES

### A. Entitlement to Attorneys' Fees Generally

Under the "American Rule," litigants generally are not entitled to an award of attorney's fees for prevailing in litigation unless provided by statute or contract. *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 253 (2010) (citations omitted); *In re Martinez,* 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract). Here, § 501.21053 of FDUTPA provides for the discretionary award of

---

[2] Defendant timely filed its motion for fees and costs within 60 days of the entry of judgment, but refiled its motions upon completion of its appeal to the Eleventh Circuit. *See* (ECF No. 92) (Final Judgment); (ECF No. 100) (Defendant's initial Verified Motion for Attorneys' Fees and Non-Taxable Expenses); (ECF No. 102) (District Court Order denying motions without prejudice and directing that Defendant refile upon a decision from the Eleventh Circuit).

reasonable attorney's fees and costs to the prevailing party. *Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14-CV-22461, 2014 WL 6968073, at *3 (S.D. Fla. Dec. 9, 2014) (citation omitted). More specifically, "[i]n any civil litigation resulting from an act or practice involving a violation[,] the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive [its] reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1). Because the District Court granted Defendant's motion for summary judgment and the Eleventh Circuit affirmed that ruling on appeal, Defendant is the prevailing party. (ECF Nos. 91, 104); *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (a defendant who obtains summary judgment in its favor is the prevailing party).

### B. Attorneys' Fees and Costs to Prevailing Defendant Under FDUTPA

"Under FDUTPA, the Florida Legislature has declared that deceptive or unfair methods of competition and practices in trade and commerce are unlawful." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013). Importantly, an award of attorneys' fees to the prevailing party under FDUTPA is within the Court's discretion. *Humane Soc. of Broward Cnty., Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007). In exercising this discretion, courts consider the following non-exhaustive factors: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions, including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not in subjective bad faith but [was] frivolous, unreasonable, groundless; (vi) whether the defense raised a defense mainly to frustrate or stall; and (vii) whether the claim brought was to resolve a significant legal question under FDUTPA law. *Sodikart*, 2014 WL 6968073, at *3 (citing *Humane Soc.*, 951 So. 2d at 972).

4

Here, Defendant seeks $751,798.50 in attorneys' fees and $76,634.39 in non-taxable costs and expenses, for a total of $828,432.89. (ECF No. 106 at 2, 11, 20). Defendant generally argues that the discretionary factors listed above weigh in favor of an award of attorneys' fees and non-taxable costs. *See generally* (ECF No. 106); *see also* (ECF No. 112) (Defendant's Reply). Defendant also argues that "because the same factual core supported both [Plaintiff's] FDUTPA and tortious interference claims," the hours expended and associated costs are interrelated and are therefore all recoverable. (ECF No. 106 at 11). In response, Plaintiff argues that the discretionary factors in *Humane Society* weigh against an award of fees under FDUTPA. *See generally* (ECF No. 110 at 6-19). The Court will address each factor in turn.

*1. The Scope and History of the Litigation*

The first *Humane Society* factor focuses on the scope and history of the litigation. Although both Defendant and Plaintiff frame this case as involving a "novel theory," *see* (ECF Nos. 106 at 3, 4, 110 at 10), the parties disagree on whether this is enough to warrant an award of fees to the prevailing party. Defendant, on the one hand, argues that the length of the litigation (approximately 17 months), the extensive discovery (including seven depositions by Plaintiff and eight depositions by Defendant), 14 contested motions (including discovery and dispositive motions), and an appeal to the Eleventh Circuit, were caused by Plaintiff's filing of a complaint "implicating a broad scope of business concerns for [Defendant]." (ECF No. 106 at 4-5). Plaintiff, on the other hand, asserts that it was Defendant who filed multiple discovery and various other pretrial motions, including motions in limine and requests for expedited relief. (ECF No. 110 at 7). Plaintiff further argues that it did not litigate the case overly aggressively and did not delay or churn the case. *Id.* at 7.

To assess the scope and history of the case, the undersigned reviewed numerous filings, including the motions to dismiss and for summary judgment, and certain discovery matters. *See, e.g.*, (ECF Nos. 7, 12, 13, 20) (briefs and order on motion to dismiss); (ECF Nos. 28, 44, 54, 91) (briefs

5

and order on motion for summary judgement); (ECF Nos. 27, 32 59) (briefs and order on Defendant's motion to compel). This review confirms that both parties aggressively litigated the case through discovery and motion practice so that neither party should be held solely accountable for the length and scope of the litigation. *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-CIV-23425, 2018 WL 1883086, at *4 (S.D. Fla. Jan. 26, 2018), *report and recommendation adopted*, No. 15-CIV-23425, 2018 WL 6980714 (S.D. Fla. Sept. 12, 2018) (noting defendant defended the case as aggressively as plaintiff pursued it); *Colomar v. Mercy Hosp., Inc.*, No. 05-22409-CIV-SEITZ, 2008 WL 4459383, at *2 (S.D. Fla. Sept. 29, 2008), *aff'd in part*, 335 F. App'x 29 (11th Cir. 2009) (finding that neither party should be held accountable for the extensive length and scope of the litigation). Although both Plaintiff and Defendant advocated their positions aggressively, neither party should be held solely responsible for the fees incurred. Accordingly, this factor is neutral.

### 2. *Plaintiff's Ability to Satisfy an Award of Fees*

The second *Humane Society* factor considers Plaintiff's ability to pay a fee award. There is no presumption that a party can pay a fee award. *Perez v. FCA US, LLC.*, No. 6:18-CV-1172-OrL-37TBS, 2019 WL 2931366, at *3 (M.D. Fla. June 11, 2019), *report and recommendation adopted*, 2019 WL 2929508 (M.D. Fla. July 8, 2019). To support its request for fees, Defendant has submitted Plaintiff's 2018 tax return. (ECF No. 106-1 at 427-47). The 2018 tax return reflects that Plaintiff had $49,538 in ordinary business income, but reported $587,248 in gross profits. (ECF Nos. 106 at 5, 106-1 at 427). Defendant argues that many deductible expenses for 2018 were unlikely to reoccur (i.e., legal services) and notes that Plaintiff reported $375,051 in inventory in the same year. (ECF Nos. 106 at 6, 106-1 at 432). In response, Plaintiff asserts that it cannot afford to pay the requested fee award and relies on the declarations of Michael Pokhai and Anthony Bachan, both owners of Plaintiff. (ECF Nos. 110-1, 110-2, respectively). Mr. Pokhai declares that "at the time this case begun, [Plaintiff] was having financial problems. [Further, d]ue to a change in personnel, [Plaintiff]

6

ceased operations in July 2019. [Plaintiff] has [n]o assets and is not generating any income." (ECF No. 110-1 at 1). For his part, Mr. Bachan asserts that because of CBP's seizure of Plaintiff's shipment, "[Plaintiff] lost approximately $1,067,652.00 in lost profits from February 2016 to September of 2018" and "lost future profits [of] approximately $1,201,109.00." (ECF No. 110-2 ¶¶ 14, 17). As well, Plaintiff argues that the 2018 tax return do not reflect Plaintiff's current financial status. Rather, according to Plaintiff, the tax return confirms that even in 2018, Plaintiff did not have the ability to pay Defendant's fees and costs. *Id.* Furthermore, Plaintiff asserts that in June 2019, it ceased all operations. *Id.*

At best, the record is inconclusive to establish Plaintiff's ability to pay the more than $800,000 in fees and non-taxable costs. *See, e.g.*, *Reilly*, 2018 WL 1883086, at *5 (finding this a neutral factor where the record suggested that plaintiff did not have the ability to pay $1.5 million incurred in fees). Here, Plaintiff's 2018 tax return sheds no light on whether Plaintiff has any current income or assets to pay the significant fees and costs incurred. On Defendant's side of the equation, Plaintiff's self-serving declarations are also insufficient to establish Plaintiff's financial condition. On balance, there is insufficient evidence to tip this factor in favor of either party. Accordingly, this factor remains neutral.

### 3. *Whether a Fee Award Would Deter Others From Acting in Similar Circumstances*

The third *Humane Society* factor is whether an award of fees would deter others from filing future legitimate FDUTPA lawsuits. Defendant argues that this case "presents no risk of deterring desirable claims under the FDUTPA . . . because Defendant's conduct was not in the course of trade or commerce," and therefore was not meant to be covered by FDUTPA. (ECF No. 106 at 6). Rather, Defendant argues that an award of fees would "discourage meritless lawsuits filed by businesses looking to shake down their competitors by dragging them through expensive litigation . . . ." (ECF No. 106 at 6-7). In response, Plaintiff emphasizes the "extremely broad" interpretation of what

7

constitutes "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."[3] (ECF No. 110 at 8-9). Plaintiff further argues that "[e]liminating the competition from suppliers of [grey] market parts harms [Defendant's] dealers because they have to pay higher prices." *Id.* at 9. According to Plaintiff, "[a]n award of attorney's fees will have a chilling effect on smaller companies against larger companies that engage in unfair conduct to stifle competition." *Id.* at 10).

While it is important to minimize frivolous lawsuits, it is equally important not to deter plaintiffs from filing meritorious FDUTPA claims. Here, the parties agree this case presented a "novel theory." (ECF Nos. 106 at 4, 110 at 10). Although Plaintiff's claim was ultimately found not to be the type of action covered under FDUTPA because Defendant was not engaged in trade or commerce, an award of fees on the facts and legal theory of this case is unlikely to deter others from filing claims under the statute. Thus, the undersigned finds that the deterrence factor is also neutral. *Colomar*, 2008 WL 4459383, at *2 (finding deterrence was a neutral factor where required to balance minimizing frivolous lawsuits while not deterring meritorious claims). In any event, although a discretionary award of attorneys' fees under FDUPTA is not warranted, the undersigned finds that Plaintiff's conduct is sufficiently discouraged by an award of taxable costs under Rule 54, as discussed further below. *See* Section III *infra*; *see also Reilly*, 2018 WL 1883086, at *5 (concluding that it was unnecessary to award fees as a deterrent when awarding cost under § 1920).

### 4. *The Merits of Parties' Positions, Including Culpability or Bad Faith*

The fourth and fifth *Humane Society* factors focus on the merits of the parties' litigation position, including whether Plaintiff's claim was frivolous, unreasonable, or groundless. Here, despite the extended litigation and grant of summary judgment in Defendant's favor, the parties insist

---

[3] Plaintiff references several cases in connection with this factor. *See* (ECF No. 110 at 8-9). But those cases are factually inapposite to whether fees should be awarded here.

8

that their respective positions were not frivolous or brought in bad faith. (ECF Nos. 106 at 7-9, 110 at 10). Defendant asserts that it made true statements to CBP and that Plaintiff's claims wholly lacked merit. *See generally* (ECF No. 106 at 7-8). Defendant also maintains that Plaintiff acted with bad faith in intentionally misrepresenting facts. *See generally* (ECF No. 112). Lastly, Defendant emphasizes that Plaintiff failed to allege an "actionable theory" so that even if Plaintiff had uncovered persuasive evidence that Defendant misrepresented facts to CBP (which it did not), Plaintiff would still not have stated a claim under FDUTPA. (ECF No. 112 at 6, 8). In response, Plaintiff asserts that although it may have "advanced a novel theory" of litigation, its claims were not frivolous or in bad faith. (ECF No. 110 at 10). In support of its position, Plaintiff includes (almost verbatim) factual assertions that it had previously made in opposing summary judgment.[4] *Compare* (ECF No. 44 at 8-17) *with* (ECF No. 110 at 11-14).

Factors four and five should be measured against the filings in the case. *See* (ECF Nos. 7, 12, 13) (briefs on motion to dismiss); (ECF Nos. 28, 44, 54) (briefs on motion for summary judgement). These filings demonstrate that the issues were extensively litigated and decided only *after* development of the factual record, at the summary judgment stage. Indeed, in denying Defendant's initial motion to dismiss, the District Court noted that "the legal issues raised [were] more properly addressed in a [m]otion [f]or [s]ummary [j]udgment." (ECF No. 20). Thereafter, the parties proceeded through discovery and motion practice. *See, e.g.*, (ECF Nos. 27, 32) (briefs Defendant's motion to compel); (ECF Nos. 85, 86, 87) (Defendant's motions in limine); (ECF No. 89) (Plaintiff's motion to compel). Moreover, nothing in the District Court record or the Eleventh Circuit's affirmance supports a finding that Plaintiff's claims were in bad faith or frivolous as to weigh in

---

[4] In connection with this factor, Plaintiff references several cases for the proposition that Defendant's conduct must be placed in "context" to understand how it could constitute "trade or commerce." (ECF No. 110 at 15-16). This argument, however, was rejected by both the District Court and the Eleventh Circuit.

9

favor of an award of attorneys' fees against Plaintiff. *See, e.g.*, *Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*, No. 17-CV-62013, 2019 WL 3412155, at *10 (S.D. Fla. May 20, 2019), *report and recommendation adopted*, No. 17-CV-62013, 2019 WL 3408888 (S.D. Fla. June 4, 2019) (concluding that there was no evidence that plaintiff's claims were unreasonable, frivolous, or groundless or that defendant raised a defense to delay the case). Accordingly, the undersigned finds that factors four and five are also neutral.[5]

### 5. Whether Claim was Brought to Resolve Significant Legal Question

The final *Humane Society* factor concerns whether the claim resolved a significant legal question under FDUPTA. Defendant argues that Plaintiff's claim was not brought to resolve a significant legal question because Defendant's activities were clearly beyond the reach of FDUPTA and not trade or commerce. (ECF No. 106 at 10). In response, Plaintiff generally explains that this case "further refined" the definition of "trade or commerce." (ECF No. 110 at 17-19).

Although Plaintiff attempted to expand the definition of "trade or commerce" beyond the traditional scope of FDUPTA, there was nothing particularly significant about the conclusion of the case at summary judgment. Indeed, both the District Court and the Eleventh Circuit ruled without argument and the issue was not particularly complex. Accordingly, the undersigned finds that this final factor does not weigh in either party's favor. It also remains neutral.

In sum, the undersigned finds that the *Humane Society* factors do not weigh in favor of a fee award to the prevailing Defendant. First, the evidence regarding Plaintiff's ability to pay a significant fee award is inconclusive. Additionally, the remaining *Humane Society* factors are either neutral or have no bearing on the case. Lastly, the District Court's conclusion at summary judgment that Defendant's conduct did not fall within "trade or commerce" under FDUTPA also weighs against a

---

[5] Moreover, the sixth factor (i.e., whether defendant raised a defense mainly to frustrate or stall) has no bearing in this case as Defendant was the prevailing party. *Sodikart*, 2014 WL 6968073, at *3.

fee award.⁶ Accordingly, the District Court should exercise its discretion to deny Defendant's Motion for fees.⁷ *Cf. HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:14-CV-2004-OrL-40KRS, 2018 WL 1863778, at *3 (M.D. Fla. Mar. 26, 2018), *report and recommendation adopted*, No. 6:14-CV-2004-OrL-40KRS, 2018 WL 1863779 (M.D. Fla. Apr. 13, 2018) (briefly reviewing equitable factors to award attorney's fees where plaintiff failed to oppose the fees).

### C. Non-Taxable Costs Under FDUTPA

Defendant also requests $ $76,634.39 in non-taxable costs under FDUTPA. Under the statute, the trial judge may award the prevailing party the reasonable costs incurred in the action, Fla. Stat. § 501.2105(3); *Chow v. Chak Yam Chau*, 640 F. App'x 834, 843 (11th Cir. 2015). For the reasons discussed above regarding fees, the discretionary and equitable *Humane Society* factors do not support an award of costs.

### III. MOTION FOR BILL OF COSTS

Under Federal Rule of Civil Procedure 54, unless a federal statute, the federal rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. Fed. R. Civ. P. 54. Thus, for purposes of Rule 54(d), a prevailing defendant is entitled to its costs unless the District Court has some special reason to deny the costs. *See, e.g., Quinto v. Universal Parking of Fla., LLC*, No. 15-21055-CIV, 2016 WL 8740232, at *2 (S.D. Fla. June 10, 2016), *report and recommendation adopted*, No. 15-21055-CV, 2016 WL 8739322 (S.D. Fla. June 30, 2016) ("The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district

---

⁶ Moreover, although Plaintiff's FDUTPA claim against Defendant was unsuccessful, Defendant's representations to CBP regarding Plaintiff's shipment caused the seizure of the auto parts, which resulted in significant financial loss to Plaintiff even though only a very small number of the thousands of parts turned out to be counterfeit. This factual scenario also weighs against shifting the total fees and costs to Plaintiff.

⁷ Because the undersigned recommends against an award of fees, the Court need not address the reasonableness of the requested fees nor conduct a lodestar analysis.

court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them."); *see also U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) ("Prevailing parties are entitled to receive costs under [Rule] 54(d).").

Furthermore, although the Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920, the Court may not tax as costs items not authorized by the statute. *See, e.g., Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *W&O*, 213 F.3d at 620 (citing *Crawford Fitting*, 482 U.S. at 445). The items that may be taxed as costs under § 1920 include: (1) fees of the Clerk and Marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; and (5) docket fees under 28 U.S.C. § 1923. 28 U.S.C. § 1920(1)-(5). Lastly, the Court has discretion in determining whether to award costs to a prevailing party, but must give a reason for denying costs. *Head*, 62 F.3d at 354.

Defendant seeks $20,031.54 in taxable costs, which include: fees for the Clerk ($400); fees for service of summons and subpoenas ($1,056.98); fees for printed or electronically recorded transcripts ($18,337.86); and taxable appellate costs ($236.70).[8] (ECF No. 105). In response, Plaintiff filed a document seeming to combine its opposition to fees and taxable costs, titled "Response in Opposition to the Defendant's Motion for Award of Prevailing Party Attorney's Fees and *Non-Taxable Expenses and Costs [DE 106]*," (ECF No. 110) ("Plaintiff's Response"). Plaintiff's Response, however, did not address taxable costs under Rule 54. *See generally* (ECF No. 110). Rather, as discussed above, Plaintiff's Response focused on whether attorneys' fees should be

---

[8] The Motion for Bill of Costs is supported by a Declaration of Thor Y. Urness (the "Urness Declaration"), which summarily describes the three categories of costs. (ECF No. 105-2 at 2-3).

awarded under FDUTPA, without mention of the costs sought by Defendant. Nonetheless, the undersigned considers the Motion under the relevant legal standard.

First, although Plaintiff's financial status is a factor that the Court may consider, it is not determinative of whether costs should be awarded to the prevailing party pursuant to Rule 54(d). *Chapman*, 229 F.3d at 1039 (noting that in awarding costs, a court should not consider the relative wealth of the parties). Here, Plaintiff filed the declarations of Michael Pokhai and Anthony Bachan. (ECF Nos. 110-1, 110-2, respectively). Mr. Pokhai asserts that "at the time this case begun, [Plaintiff] was having financial problems. [Further, d]ue to a change in personnel, [Plaintiff] ceased operations in July 2019. [Plaintiff] has [n]o assets and is not generating any income." (ECF No. 110-1 at 1). Mr. Bachan, in turn, asserts that resulting from the event surrounding the claims at issue in the case, "[Plaintiff] lost approximately $1,067,652.00 in lost profits from February 2016 to September of 2018" and "lost future profits [of] approximately $1,201,109.00." (ECF No. 110-2 ¶¶ 14, 17). These declarations, however, are not enough to overcome the presumption in favor of an award of costs. *See, e.g., Morris v. Precoat Metals*, No. 2:11-CV-0053-SLB, 2013 WL 830868, at *7 (N.D. Ala. Mar. 4, 2013) (noting that good faith and limited financial resources are not enough to overcome the presumption of an award of costs). Rather, there must be a sound basis and substantial documentation of a true inability to pay. *Id.* (noting that substantial documentation includes more proof than simply "self-serving statements that one is unable to pay the costs sought.") (citations omitted). Here, based on the inconclusive nature of the evidence of Plaintiff's finances, the undersigned finds that Plaintiff has not overcome the presumption that prevailing parties are to be awarded costs under Rule 54(d). Thus, Defendant should be awarded costs under Rule 54 as a prevailing party. The Court next considers the claimed costs to determine whether they are recoverable as guided by Rule 54 and 28 U.S.C. § 1920.

### A. Fees of the Clerk

Defendant seeks $400 for removing the case to federal court. (ECF Nos. 105 at 2, 105-2 at 5-6). Pursuant to 28 U.S.C. § 1920(1), the Court determines that an award of $400 for filing the Complaint in federal Court is recoverable.

### B. Service of Summons and Subpoenas

Defendant seeks $1,056.98 for service of subpoenas. (ECF No. 105 at 3). 28 U.S.C. § 1920(1) permits the court to award fees for private service of process, so long as these costs do not exceed the fees permitted by statute. *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1332-33 (S.D. Fla. 2009); *see also Guerra v. Ameri-Clean Pumping, Inc.*, No. 18-22998-CV, 2019 WL 1859243, at *4 (S.D. Fla. Apr. 25, 2019) (awarding costs for service of process). The Court is also guided by the statutory limit set forth in 28 C.F.R. § 0.114, which provides that fees charged by the United Sates Marshals Service for personal service of process are $65 per hour. *See also Monelus*, 609 F. Supp. 2d at 1333.

Here, Defendant lists five cost categories related to fees for service on several individuals.[9] (ECF No. 105-2 at 7, 9, 14, 17-18). These fees also include surveillance and investigation costs. *See, e.g.*, (ECF No. 105-2 at 7) (listing $574.70 for service on Sanjay Singh and Ryan Rengen and $297.28 for apparent surveillance research into Singh and Rengen); *see also* (ECF No. 105-2 at 14) (invoice for online research into Singh and Rengen). Section 1920, however, does not authorize recovery for fees associated with an investigator. *See, e,g.*, *Abby v. Paige*, No. 10-23589-CIV, 2013 WL 12246348, at *10 (S.D. Fla. Aug. 2, 2013), *report and recommendation adopted*, No. 10-23589-CIV, 2013 WL 12246349 (S.D. Fla. Oct. 1, 2013) (denying investigative costs under § 1920); *Zelaya v. Bartholomai*, No. 02-22552-CIV, 2007 WL 9652960, at *5 (S.D. Fla. Aug. 9, 2007), *report and*

---

[9] The individuals listed are John T. Hunt, Sanjay Singh, Ryan Rengen, Adam Cornett, and Roberto Del Toro. (ECF No. 105-2 at 7).

14

*recommendation adopted*, No. 02-22552-CIV, 2008 WL 11333727 (S.D. Fla. Feb. 11, 2008) ("Costs of an investigator are not taxable under 28 U.S.C. § 1920").

Moreover, although Defendant asserts that it has reduced the amount of costs to conform with the statutory rate, *see* (ECF No. 105-2 at 7), it fails to explain why it should recover for more than one hour for service on each individual. Indeed, some of the supporting invoices include several tasks, without distinguishing between the time actually spent on serving the individuals versus other tasks. *See, e.g.*, (ECF No. 105-2 at 14) (listing cost of research into social media accounts). Without legal authority or explanation to support more than one hour for these costs, the undersigned will limit the award to the statutory rate for one hour of service on each individual.

Consequently, the undersigned recommends awarding Defendant $325 for the costs of service of process. This amount is the statutory rate of $65 for service on the five individuals listed in the Motion (i.e., $65 x 5 = $325). (ECF No. 105-2 at 7).

### C. Fees for Printed or Electronically Recorded Transcripts

Defendant seeks $18,337.86 in costs for deposition transcripts and videographer fees "related to issues present in the case and thought reasonably necessary at the time taken." (ECF Nos. 105 at 4, 105-2 at 3). As noted above, Plaintiff has not addressed Defendant's request for specific costs. *See generally* (ECF No. 110).

Taxation of deposition costs is authorized by § 1920(2) and are generally taxable as long as they were necessarily obtained for use in the case. *See W&O*, 213 F.3d at 620; *McDaniel v. Bradshaw*, No. 10-81082-CIV, 2011 WL 6372788, at *2 (S.D. Fla. Dec. 20, 2011) ("in determining whether the cost of a particular deposition is taxable, 'the district court must evaluate the facts of each case and determine whether all or any part of a copy of any or all of the depositions was necessarily obtained for use in the case.'") (citations and quotations omitted). In determining the necessity of a deposition, the deposition must only appear to have been reasonably necessary at the time it was taken. *See*

*W&O*, 213 F.3d at 620-21. Moreover, under § 1920(2), the cost of transcripts and the attendance fee of the court reporter are also recoverable. *See Whittier v. City of Sunrise*, No. 07-60476-CIV, 2008 WL 5765868, at *5 (S.D. Fla. Dec. 3, 2008) (awarding reimbursement of transcript and stenographer's attendance fee). "A district judge has great latitude in determining whether a deposition was 'necessarily obtained for use in the case' or was obtained merely for the convenience of the attorneys." *McDaniel*, 2011 WL 6372788, at *2.

Without a specific challenge to whether the transcripts where necessarily obtained for use in the case, the Court is left to rely on Defendant's submission. In Table 3 of its motion, Defendant has listed the transcript costs, identified the individual witnesses, and attached supporting invoices and receipts of payments. (ECF No. 105-2 at 20-46).

Based on Defendant's submission, and absent objection from Plaintiff, the undesigned recommends that Defendant be awarded $18,337.86 in costs associated with deposition transcripts and videographer fees.

### D. Appellate Costs

Lastly, Defendant seeks $236.70 in costs incurred in its appeal to the Eleventh Circuit. *See* (ECF No. 105 at 5); *see also* (ECF No. 104 at 15) (Bill of Costs at Eleventh Circuit). Defendant summarily lists these costs as "docket fees under 28 U.S.C. § 1923." (ECF No. 105-1 at 2). Although § 1920 does list "cost of docket fees" within the allowable costs, *see* 28 U.S.C. § 1920(5), Defendant, fails to explain why these appellate costs should be awarded by the District Court. Further, Defendant does not explain how § 1923 applies to the instant case. Accordingly, in the absence of an explanation or supportive legal authority to support this cost, the undersigned recommends that the District Court deny it.

16

In sum, Defendants should be awarded $19,062.86 in costs, which is the sum of clerk fees ($400), fees for service of summons and subpoenas ($325), and fees for deposition transcripts and videographer fees ($18,337.86).

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that: (i) Defendant's Verified Motion for Award of Prevailing Party Attorneys' Fees and Non-Taxable Expenses and Costs (ECF No. 106) be **DENIED**; and (ii) Defendant's Motion for Bill of Costs (ECF No. 105) be **GRANTED IN PART**. Defendant should be awarded $19,062.86 in taxable costs.

Within **seven (7)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on February 26, 2021.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Kathleen M. Williams
　　All Counsel of Record